# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HIEN THANH VO,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **No. 13-1075-JWL** |
| ) | |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.      Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI benefits, alleging disability beginning June 13, 2010. (R. 10, 163-75). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in evaluating the medical opinions of his treating physician and treating psychologist, and in determining that Plaintiff's allegations of symptoms are not credible.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

2

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court begins its consideration with the treating source medical opinions.

## II.    Evaluation of Treating Source Medical Opinions

Plaintiff claims error in the ALJ's determination to accord no weight[2] to the treating source opinions of Dr. Nguyen and Dr. Schell.  He argues that the ALJ discounted Dr. Nguyen's opinion because it was internally inconsistent and inconsistent with Cooperative Disability Investigation (CDI) reports, but that the ALJ did not specifically explain those inconsistencies.  He argues that the ALJ failed to discuss Dr. Nguyen's opinion that Plaintiff is unable to bend or stoop, and that the ALJ's failure in that regard is prejudicial error because an inability to stoop would preclude all work.  He argues that the ALJ assessed an RFC without considering Dr. Nguyen's opinion and that

---

[2]Plaintiff asserts the ALJ gave little weight to Dr. Nguyen's opinion.  (Pl. Br. 48) (quoting R. 702).  However, the document quoted in Plaintiff's Brief is an RFC assessment form completed by a state agency medical consultant, Dr. Waxman, in which Dr. Waxman gave little weight to Dr. Nguyen's opinion.  Although the ALJ accorded substantial weight to Dr. Waxman's opinion with regard to Plaintiff's "ability to lift and/or carry weight, and his ability to stand and/or walk, and sit" (R. 26), he accorded no weight to Dr. Nguyen's opinion.  (R. 25).

the RFC derived thereby is erroneous as a matter of law.  In similar fashion, Plaintiff argues that Dr. Schell's treating source medical opinion regarding Plaintiff's mental abilities should have been accorded controlling weight, and that the ALJ engaged in what Plaintiff describes as "abuse of process" by rejecting Dr. Schell's opinion based upon inconsistency, without specifying the inconsistencies found.

The Commissioner argues that the ALJ properly evaluated the treating source medical opinions of Dr. Nguyen and Dr. Schell.  She argues that the ALJ explained the inconsistencies he found with Dr. Nguyen's opinion and cited to record evidence in support.  She suggests that the ALJ found that Plaintiff is restricted to occasional stooping, and therefore did not need to question the vocational expert regarding an inability to stoop.  With regard to Dr. Schell's opinion, she argues that the ALJ properly explained the specific inconsistencies relied upon to reject Dr. Schell's opinion.

In his Reply Brief, Plaintiff for the first time argues that the ALJ erroneously ignored Dr. Henderson's opinion that Plaintiff has severe difficulty with squatting and "arising," that this opinion is in conflict with the ALJ's finding that Plaintiff can sit for 6 hours with regular breaks in a normal workday,  and that the ALJ failed to provide a narrative discussion in accordance with Social Security Ruling (SSR) 96-8p explaining that conflict.

### A.    Standard for Evaluating Treating Source Medical Opinions

A treating physician's or psychologist's opinion about the nature and severity of plaintiff's impairments should be given controlling weight by the Commissioner if it is

well supported by clinical and laboratory diagnostic techniques and if it is not

inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d

1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When a

treating source's opinion is not given controlling weight, the ALJ must nonetheless

specify what lesser weight he assigned that opinion.  Robinson v. Barnhart, 366 F.3d

1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R.

§§ 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of

treatment relationship and frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or

testing performed; (3) the degree to which the physician's opinion is supported by

relevant evidence; (4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is

rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see

also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v.

Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court

will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is]

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

6

gave to the treating source's medical opinion and the reasons for that weight.'" <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting <u>Watkins</u>, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

### <u>B.</u>      <u>Dr. Nguyen's Opinion</u>

The ALJ discussed and evaluated Dr. Nguyen's opinion.  (R. 25).  He recognized that Dr. Nguyen is Plaintiff's treating physician and summarized his medical opinion, noting his opinion that Plaintiff can perform work at the sedentary exertion level, but is limited to less than two hours of standing and/or walking, and less than six hours of sitting in an eight-hour workday, and is unable to perform any postural maneuvers.  <u>Id.</u> The ALJ then noted the proper standard for evaluating a treating source medical opinion, and expressed his finding that Dr. Nguyen's opinion was accorded  no weight.  <u>Id.</u>  He gave his reasons for rejecting Dr. Nguyen's opinion, stating that Dr. Nguyen opined far greater limitations than the medical evidence supports; that the opinion was significantly more restrictive than the opinion of Plaintiff's treating orthopedic surgeon, Dr. Pollock, who opined that there was no reason Plaintiff could not walk or stand; and that Dr. Nguyen's opinion contradicts Plaintiff's report of his own activities.  (R. 25).  The ALJ explained that Plaintiff has reported that he is socially active, goes to the YMCA five

times a week, swims, does water aerobics, lifts weights, and rides the exercise bicycle.
Id.  He also noted that Plaintiff was observed bending and squatting by the CDI unit.  Id.

Plaintiff's argument that the ALJ did not explain the inconsistencies relied upon in
rejecting Dr. Nguyen's opinion is belied by the decision at issue.  As noted above, the
ALJ stated he rejected the opinion because Dr. Nguyen opined far greater limitations than
the medical evidence supports; because the opinion was significantly more restrictive
than the opinion of Plaintiff's treating orthopedic surgeon, Dr. Pollock, who opined that
there was no reason Plaintiff could not walk or stand; and because Dr. Nguyen's opinion
contradicts Plaintiff's report of his own activities.  (R. 25).  The ALJ's entire RFC
assessment can be seen as his explanation of how the record evidence supports the
limitations which he assessed--most notably that Plaintiff can stand and/or walk at least 2
hours and can sit for 6 hours in an eight-hour workday and that Plaintiff has no postural
limitations[3] except that he must avoid climbing ladders, ropes, and scaffolds, and that he
can only occasionally climb ramps and stairs.  (R. 16).  Moreover, the ALJ accorded
substantial weight to the opinions of Dr. Cohen and Dr. Waxman with regard to
Plaintiff's ability to sit, stand, and walk.  (R. 26).  This evidence represents less restrictive
limitations than opined by Dr. Nguyen, and was all discussed by the ALJ in the decision
at issue.  The ALJ also specifically noted that Dr. Nguyen's limitations were greater than

---

[3]The Commissioner's suggestion that the ALJ restricted Plaintiff to only
occasional stooping is not supported by the record.  (R. 16).

those opined by Dr. Pollock, and that Dr. Nguyen's opinion was in conflict with Plaintiff's report of his own activities.

Plaintiff's allegation that the ALJ did not discuss the issue of bending and/or stooping is also without merit. Although Plaintiff is correct to argue that a complete inability to stoop would usually require a finding of disability; as noted above, in discussing Dr. Nguyen's opinion the ALJ specifically cited the report of the CDI unit that Plaintiff was observed bending and squatting. (R. 25). Moreover, earlier in the decision the ALJ had summarized the CDI reports, noting that they demonstrate that Plaintiff is "capable of driving, walking, bending, squatting, reaching, and rising from a seated position, with minimal difficulties." (R. 24). The record evidence supports the ALJ's summary and findings with regard to bending, squatting, and rising from a squatting position. As the second CDI report states:

> "1:18pm: VO drove the vehicle into the driveway, parked and exited the vehicle without the use of the walker or any other assistive device. VO walked around behind the vehicle up to the front door on the passenger side. VO walked with fluid movements and without the aid of any assistive device. He unlocked and opened the front passenger door. He then bent down in order to reach under the dashboard of the Lexis [sic].
>
> 1:18pm – 1:21pm: VO remained partially sitting on the car door's threshold while bending over. The door obscured exactly what he was doing, however, it appeared that he was leaning over to work underneath the dashboard. VO also moved to a squatting position but remained leaned in underneath the dashboard. VO later moved to a standing position and bent over at the waist.
>
> 1:21pm: VO rose up to a standing position, closed the door and walked into the house through the open garage door. VO did not use any assistive device and he displayed no obvious pain mannerisms or difficulty walking.

(R. 705-06).

SSR 85-15 explains that in Social Security parlance to kneel is to bend the legs alone; to stoop is to bend the spine alone; and to crouch is to bend both the spine and legs. 1985 WL 56857, *2. In context, the ALJ's discussion clearly considered the issues of stooping, kneeling, crouching, and bending. Contrary to Plaintiff's argument, the ALJ recognized the limitations opined by Dr. Nguyen and rejected them. Moreover, as required by law he provided specific, legitimate reasons for doing so.

As demonstrated by the discussion above, Plaintiff's argument that the ALJ assessed an RFC without considering Dr. Nguyen's opinion is without merit. Consequently, Plaintiff's further argument that an RFC derived in such a manner is erroneous as a matter of law must also fail in the circumstances of this case.

### C.   Dr. Schell's Opinion

In a similar fashion, Plaintiff claims that the ALJ "improperly marginalized and discredited [Dr. Schell's opinion] solely in order to provide congruency in an improperly derived mental residual functional capacity assessment in violation of SSR 96-2p [(because Dr. Schell's opinion has not been accorded controlling weight)] and SSR 96-8p [(because Sr. Schell's opinion was not considered and was not incorporated into the RFC assessed)]." (Pl. Br. 51). He argues that the ALJ rejected Dr. Schell's opinion because Dr. Schell's records are internally inconsistent, but failed "to identify, cite, discuss or date any of these instances of inconsistency." (Pl. Br. 51). Plaintiff's arguments with regard to Dr. Schell's opinions are also without merit.

The ALJ dedicated more than three pages of his decision specifically to discussing the record evidence relating to Plaintiff's mental condition.  (R. 20-23).  In that discussion, he acknowledged that Dr. Schell was Plaintiff's treating psychologist from November 2010 through at least May 2011.  (R. 20-21).  His summary began with a summary of the psychiatric assessment of Plaintiff completed in October 2010 when Plaintiff was referred to a psychiatrist because he had made suicidal comments.  (R. 20). He summarized treatment records from Dr. Schell dated from November 6, 2010 through May 4, 2011, and psychological testing performed by Dr. Schell on January 17, 2011.  Id. 20-21.  The ALJ summarized the reports of two consultative psychological examinations performed by Dr. Moeller at the request of the Social Security Administration in February and in August, 2011.  Id., 21-22.

The ALJ summarized two Mental RFC Assessment forms completed by Dr. Schell on March 1, 2011 and January 6, 2012.  (R. 26) (citing R. 511-14, 720).  He noted that of the twenty mental abilities listed on the forms, Dr. Schell opined in the first form that Plaintiff is "markedly limited" in eighteen of the abilities listed and "not significantly limited" in the other two abilities.  On the other form which has a slightly different rating scheme, Dr. Schell opined that Plaintiff has no useful ability in eighteen abilities but has no problem in the other two areas.  (R. 26).  The ALJ noted that the two areas to which Dr. Schell attributed no problems or "not significantly limited," were the mental abilities to understand and remember, and to carry out simple instructions.  Id.  The ALJ also summarized a Psychiatric Review Technique form completed by Dr. Schell in which he

opined that Plaintiff has "marked" limitations in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace; and has had three episodes of decompensation, each of extended duration.  Id. (citing 10F, R. 507).

The ALJ gave Dr. Schell's opinion no weight because it was not supported by the record evidence, because it was not supported by Dr. Moeller's psychological testing, because it was not supported by Dr. Schell's progress notes, because Dr. Schell found Plaintiff functions in the mild mental retardation range but acknowledged that the results of the intelligence testing he administered cannot be validated as reliable, and because "there is no medical evidence showing any periods of decompensation."  Id.

The discussion above demonstrates that the ALJ considered Dr. Schell's opinion, although he determined to accord it no weight based upon that consideration.  Plaintiff's argument that the opinion was not considered is without merit.  Moreover, because Dr. Schell's opinion is clearly inconsistent with Dr. Moeller's opinion that Plaintiff is mentally capable of engaging in full-time employment, Dr. Schell's opinion is inconsistent with other substantial evidence in the record and is not worthy of controlling weight.  Therefore, the only remaining question is whether in giving no weight to Dr. Schell's opinion, the ALJ erroneously relied upon internal inconsistencies in Dr. Schell's report which the ALJ failed "to identify, cite, discuss or date" as Plaintiff alleges.  The decision demonstrates otherwise.

The ALJ began the explanation of his reasons for rejecting Dr. Schell's opinion by stating, "As discussed extensively in the forgoing analysis . . .," and one of the reasons he

gave for rejecting Dr. Schell's opinion was that "Dr. Schell's opinions are based on

inconsistent findings revealed in his own progress notes." (R. 26). As suggested by this

explanation, the ALJ had earlier summarized Dr. Schell's treatment notes, and had

pointed out inconsistencies when making that summary. (R. 20-21). The ALJ explained

that on December 4, 2010[4] Dr. Schell noted Plaintiff's symptoms were decreasing in

severity, but he continued to assign a global assessment of functioning (GAF) score of

35,[5] indicating a major impairment. (R. 20). The ALJ noted that the December 15, 2010

treatment note revealed

> gradual symptom improvement, but his mood is described as depressed,
> apathetic, manic, irritable and anxious. His affect is described as sad,
> guilty, disgusted, fearful, suspicious, angry and perplexed. He reportedly
> exhibited poor memory, manic-pressured speech with poverty of content.

(R. 20-21). The ALJ noted that the next week Dr. Schell's progress notes indicated the

same mental status, and they indicated continued improvement in symptoms but with a

GAF of 35. Id. at 21. The ALJ pointed to the January 17, 2011 treatment notes which

once again indicated symptom improvement but continued to record a GAF of 35. Id.

---

[4]The decision reflects the date as December 4, 2011, but the record to which the ALJ cited for this information reveals the date of treatment was December 4, 2010. (R. 20) (citing Ex. 9F/26, 27 (R. 489, 490)).

[5]A GAF score in the range from 31 to 40 indicates "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. text revision 2000) (emphasis in original).

13

Finally, the ALJ explained his view of these inconsistencies in Dr. Schell's treatment

notes:

> Although the progress notes reflect continued symptom improvement with
> medication compliance, no new stressors and no new risk areas, and that the
> claimant is fully engaged in the therapeutic process, Dr. Schell consistently
> gives the claimant a GAF of 35 (Exhibit 12F/8, 11).  In addition, the
> claimant's mental status apparently never changes; as the progress notes
> dated May 4, 2011 indicate that the claimant's mood is "depressed,
> apathetic, manic, irritable and anxious.  His affect is described as sad,
> guilty, disgusted, fearful, suspicious, angry and perplexed.  He reportedly
> exhibited poor memory, manic-pressured speech with poverty of content."
> (Exhibit 12F/8).  This is the same mental status reported on February 16,
> 2011 (Exhibit 12F/31), January 28, 2011 (Exhibit 12F/35), January 7, 2011
> (Exhibit 12F/40), December 29, 2010 (Exhibit 9F/10), December 22, 2010
> (Exhibit 9F/13), December 15, 2010 (Exhibit 9F/18), and December 4, 2010
> (Exhibit 9F/27).  After reviewing the progress notes of Dr. Schell, it is
> unclear why the claimant carriers [sic] a GAF of 35, even though he has
> consistent symptom improvement.

(R. 21).  This discussion leaves no doubt that contrary to Plaintiff's claim, the ALJ

identified, cited, discussed, and dated the instances of inconsistency upon which he relied

to reject Dr. Schell's opinion.

The court finds it necessary to comment on another aspect of counsel's argument

with regard to the ALJ's consideration of Dr. Schell's opinion.  Counsel argues that the

ALJ's alleged failure to explain the instances of alleged inconsistency is an "abuse of

process:"

> Plaintiff views this type of unilateral self-justi[fi]cation of adjudication
> highly unreasonable and is offended by this process where ALJ Harty is
> simply able to indicate "inconsistency without specificity" and snap[–]it's
> done!  Plaintiff has more respect for the process and is offended by this
> abuse of process by the Administrative Law Judge.

(Pl. Br. 51).  Such an <u>ad hominem</u> attack by a member of the bar on the adjudicator in a legal proceeding is unseemly in every circumstance, and is particularly inappropriate in a case such as this, where the alleged factual basis for the attack is patently unsupported by the record.  Counsel is cautioned to be more restrained and less personal in his arguments to the court about an adjudicator before whom he has appeared.

### D.    Dr. Henderson

As noted above, Plaintiff argued in his Reply Brief for the first time that the ALJ erroneously ignored Dr. Henderson's opinion that Plaintiff has severe difficulty with squatting and "arising," that this opinion is in conflict with the ALJ's finding that Plaintiff can sit for 6 hours with regular breaks in a normal workday,  and that the ALJ failed to provide a narrative discussion in accordance with Social Security Ruling (SSR) 96-8p explaining this conflict.  Arguments raised for the first time in a reply brief are waived, and the court declines to consider this argument.  <u>National Credit Union Admin. Bd. v. Credit Suisse Securities (USA) LLC</u>, 939 F. Supp. 2d 1113, 1118 n.1 (D. Kan. 2013); <u>see also</u> <u>Lynch v. Barrett</u>, 703 F.3d 1153, 1160 n.2 (10th Cir.), <u>cert. denied</u>, ___ U.S. ___, 133 S. Ct. 2352, 185 L. Ed. 2d 1078 (2013) (applying the same rule at the appellate level).  Even if the court were to consider Plaintiff's argument, it would reject it because the ALJ specifically noted that Dr. Henderson found severe difficulty squatting and "arising" from the sitting position (R. 14, 19) and because Plaintiff does not explain how severe difficulty <u>squatting and "arising"</u> from the sitting position preclude finding that Plaintiff can <u>sit</u> for 6 hours in a workday.

### III.    Credibility

As his final claim, Plaintiff claims error in the ALJ's credibility determination due to erroneous factual findings.  First, he argues that the ALJ erroneously found that Plaintiff goes to the YMCA four or five times in a day rather than in a week, and that Plaintiff is prejudiced by this misperception.  Then, he argues that the ALJ erred in finding that there is no diagnosis in the medical records of brain injury or impairment which would support Plaintiff's allegations of dementia and personality change disorder.  Plaintiff argues that the ALJ only arrived at his determination of non-disability by "ignoring tremendous substantial evidence in support of a finding of disability."  (Pl. Br. 53).  The Commissioner argues that the review of credibility findings is deferential, and that substantial evidence supports the ALJ's credibility determination.  Specifically, she argues that the reference to going to the YMCA four or five times a day is a typographical error on the part of the ALJ, that the ALJ understood that Plaintiff only goes to the YMCA four or five times a week, and that the ALJ properly found that dementia and personality change disorder secondary to brain trauma are not medically determinable impairments in the facts of this case.  In his Reply Brief, Plaintiff asserts that the ALJ's misperception that Plaintiff goes to the YMCA several times a day is confirmed by his statement elsewhere in the decision that Plaintiff is able to "ride an exercise bicycle at the YMCA several times a day, up to five (5) days a week.  (Reply 2) (citing R. 20).

As the Commissioner argues, the court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding

on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  They "are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

As Plaintiff argues in his Brief, in finding that Plaintiff has mild restrictions in activities of daily living, the ALJ stated that Plaintiff "goes to the YMCA 4 or 5 times a day where he rides the exercise bike and utilizes the pool."  (R. 15).  But, in the very next paragraph the ALJ found that Plaintiff has no difficulties in social functioning, and stated that Plaintiff "goes to the YMCA several times a week and attends Church services once a week."  (R. 15) (citing Ex. 4E/11).  However, in summarizing his physical RFC assessment, the ALJ later stated that "the claimant himself reported that he is able to lift weights, swim, do light aerobic activity, and ride an exercise bicycle at the YMCA several times a day, up to five (5) days a week."  (R. 20) (citing Ex. 4E).

By themselves, the three statements above might leave one wondering whether the ALJ really understood that Plaintiff reported he goes to the YMCA only four or five times a week, or whether the ALJ believed that at least some days Plaintiff goes to the YMCA several times a day.  But, they are not by themselves.  The ALJ also cited Plaintiff's report to Dr. Moeller that he does physical therapy twice weekly, which includes water aerobics at the YMCA.  (R. 22) (citing Ex. 19F/8 (R. 606)).  Later, in discussing the medical opinions, the ALJ once again noted that Plaintiff goes "to the YMCA five times a week."  (R. 25) (citing Ex. 4E/11 (R. 223)).  The ALJ also noted the opinion of Plaintiff's friend, An Nguyen, wherein she stated that Plaintiff "goes to the YMCA up to three times a week."  (R. 27) (citing Ex. 18E/7 (R. 271)).  Finally, there was the hearing, wherein Plaintiff discussed his activities at the YMCA.  (R. 61, 63-64).  When being questioned by his attorney, Plaintiff stated that he goes to the YMCA "[a]bout four or five times a week."  (R. 61).  Later, counsel followed-up on that line of questioning, noting that Plaintiff was in the habit of going to the YMCA five times a week, and asking if there was a good chance, "typical day you might be at the YMCA?"  Plaintiff responded, "Yes," and that sometimes he started "at noon, sometime at three, sometime at six."  (R. 63-64).  In these circumstances, it appears that the ALJ's statements regarding going to the YMCA several times a day are merely typographical errors.  Plaintiff has not shown that he "is prejudiced by the misperception that he is able to attend the YMCA at such frequency."  (Pl. Br. 52).  The decision does not assign an enhanced ability to attend the

YMCA multiple times a day, for in context the ALJ assessed the ability to stand and/or walk only two hours in an eight-hour workday.  (R. 16).

Plaintiff also complains that the ALJ erred in his credibility determination by finding that Plaintiff's allegation of dementia and personality change disorder because of a brain injury because "there is no diagnosis of brain injury or impairment in the medical records."  (R. 13).  Plaintiff's Brief "**proudly heralds that ALJ Harty is simply mistaken on this issue!**  Dr. Nguyen's December 4, 2010 date of service chronicles brain injury, specifically amnesia and memory loss per the accident."  (Pl. Br. 53) (citing (R. 587)) (bold in original).  In response, the Commissioner argues that Dr. Nguyen's diagnosis of amnesia and memory loss from the motor vehicle accident is not evidence of underlying head injury, because medical evidence contemporaneous with the accident and shortly thereafter confirms no loss of consciousness or head injury at that time.

As Plaintiff proudly heralds, Dr. Nguyen provided a "diagnosis" at Plaintiff's December 14, 2010 office visit of:  "amnesia, memory loss p̄ accident."  (R. 587).  In Plaintiff's view, this fact demonstrates brain injury contrary to the ALJ's finding.  The court does not agree.

First, as discussed above, the ALJ accorded Dr. Nguyen's opinion no weight, and that determination is supported by substantial record evidence.  Therefore Dr. Nguyen's diagnosis is not compelling.  Moreover, in discussing Plaintiff's allegations of dementia and personality change disorder, the ALJ noted that SSR 96-4p requires that, "No symptom or combination of symptoms can be the basis for a finding of disability, no

19

matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."  (R. 13) (quoting SSR 96-4p).  He concluded:

> Therefore, in the absence of laboratory or clinical findings or medical observation validating symptoms[,] the existence of a physical impairment cannot be medically determined.  In this case, the claimant sustained injuries in the motor vehicle accident described above on June 13, 2010, but the head CT scan was within normal limits (Exhibit 2F/46 [(R. 391)]), and the claimant did not lose consciousness (exhibit 2F/17 [(R. 362)]).  There is no diagnosis of brain trauma or injury in the medical records or medical evidence that supports diagnoses of dementia and personality change secondary to brain trauma.

(R. 13).  While Dr. Nguyen diagnosed amnesia and memory loss, he did not diagnose dementia and personality change secondary to brain trauma.  Moreover, as the Commissioner points out, when Plaintiff was referred for a psychiatric evaluation he denied traumatic brain injury in his motor vehicle accident and told Dr. McMahon that he did not have a loss of consciousness at that time.  (R. 401).  On the day of the accident, the records recorded "no loss of consciousness," and that Plaintiff's head was "normocephalic and atraumatic" (R. 362), he was neurologically intact (R. 360), and neurosurgery was not indicated.  (R. 363).  A CT scan taken of Plaintiff's head on the day of the accident was within normal limits.  (R. 360, 391).  On October 20, 2010 a second CT scan was made of Plaintiff's head, which was "[u]nremarkable."  (R. 409).

The evidence supports the ALJ's finding that there is no diagnosis of brain trauma or injury which supports diagnoses of dementia or personality change as a result of brain

trauma.  Moreover, as the Commissioner points out, the ALJ found that Plaintiff has

severe mental impairments of bipolar disorder, anxiety disorder, mood disorder,

posttraumatic stress disorder, panic disorder, dependent personality disorder, and

substance abuse.  Plaintiff has not shown record evidence of dementia and has shown no

error in the ALJ's finding in that regard.

In his final argument, Plaintiff asserts "that the ALJ 'may not ignore evidence that

does not support his decision, especially when that evidence is significantly probative.'"

(Pl. Br. 54) (quoting Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir.

2001)) (italics omitted).  However, Plaintiff does not identify significantly probative

evidence which the ALJ ignored.  Plaintiff has alleged only two errors with regard to the

ALJ's credibility determination, and neither one is sustained.  Therefore, Plaintiff can

show no error.

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered in accordance

with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's

decision herein.

Dated this 11th  day of June 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**